IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN TOOTLE, | : | |
| Plaintiff | : | |
| | : | No. 1:24-cv-0162 |
| v. | : | |
| | : | Magistrate Judge Dodge |
| JOHN DOE CORRECTIONAL | : | |
| OFFICERS, JOHN DOE, MILLER, | : | Electronically Filed Document |
| PETERS, WILSON, LEE *and* | : | |
| SUPERINTENDENT IRWIN, | : | |
| Defendants | : | |

BRIEF IN SUPPORT OF
CORRECTIONS DEFENDANTS' PARTIAL MOTION TO DISMISS COMPLAINT

Corrections Defendants, by the undersigned counsel, hereby submits this Brief in Support of their Partial Motion to Dismiss the Complaint [ECF 5] filed by Brian Tootle, pursuant to Fed. R. Civ. P. 12(b)(6).

I. INTRODUCTION

Corrections Defendants read the Complaint to seek to hold them liable for violation of the First (retaliation; access to courts) and Fourteenth (equal protection) Amendments, pursuant to 42 U.S.C. § 1983 and state law claims for intentional infliction of emotional distress and conspiracy. Plaintiff asserts that Corrections Defendants "retaliated, conspired, and discriminated and/or treated him differently, and interfered with him accessing the courts." Id., ¶ 1. Corrections Defendants move to dismiss Plaintiff's Complaint as Plaintiff has failed to state a claim that gives rise to a cause of action under § 1983, and has failed to allege the personal involvement of Superintendent Randy Irwin in the alleged incidents in this case.

If this Court grants Defendants' Partial Motion to Dismiss, then only the First Amendment retaliation claim against Corrections Officers Miller, Peters, Wilson and Lee would proceed. The

First Amendment access to courts claim, Fourteenth Amendment equal protection claim, and any state law intentional infliction of emotional distress and conspiracy claims asserted against all Corrections Defendants would be dismissed with prejudice.

## II. PROCEDURAL HISTORY

Brian Tootle ("Plaintiff") was formerly in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Forest ("SCI-Forest"). Plaintiff is currently in DOC custody at the State Correctional Institution at Dallas ("SCI-Dallas"). Plaintiff initiated this prisoner civil rights action in this Court on or about August 28, 2024 by filing a *pro se* Complaint with a Motion for Leave to Proceed *in forma pauperis* [ECF 1] and the Complaint [ECF 5] was docketed that same day. In accordance with the applicable time periods provided by the Federal Rules, the Defendants have filed a Partial Motion to Dismiss the Complaint pursuant to Federal Rule 12(b)(6).

## III. STATEMENT OF ALLEGED FACTS

Plaintiff alleges that on June 17, 2022, a Correctional Officer told Plaintiff that Unit Manager, Defendant Miller wanted to speak with him. [ECF 5], at ¶ 39. During a conversation, Defendant Miller allegedly told Plaintiff "you've been causing a lot of trouble around here, it's time for a truce." Id., ¶ 40. When Plaintiff responded that he just wanted to be left alone, Defendant Miller responded that "if you keep filing grievances they are going to keep writing you up and f***ing with you and nobody is going to be happy." Id., ¶ 42. Plaintiff then replied that "I feel like you keep putting people in and out of my cell to frustrate me and stress me out." Id., ¶ 43. Defendant replied "yea that's how I gang war, but I already talked to my folks so they know, and I'm going to Sgt. Wilson's… house tonight to talk to him." Id., ¶ 45.

Plaintiff further claims that on June 28, 2022, Defendant Wilson "fabricated a misconduct against Plaintiff, which he was found guilty of." Id., ¶ 50. Defendant Miller then "deliberately and strategically guarded the Plaintiff into making c/o Wilson's fabricated misconduct formal," by "electing another c/o (Unit Manager Perrin) to conduct Plaintiff's hearing." Id., ¶¶ 51-52.

On August 29, 2022, Defendant Peters issued the Plaintiff a misconduct that involved him and another Inmate, Brown (NG-8852), however Plaintiff was the only one who received the misconduct. Id., ¶¶ 55-56. Plaintiff asserts that Defendants Peters "intentionally and/or treated the Plaintiff different than Inmate Brown NG-8852 out of retaliation for the Plaintiff filing grievances." Id., ¶ 58. Defendant Lee and Peters then engaged in retaliatory misconduct by formalizing the misconduct despite Plaintiff's request to "keep it informal." Id., ¶ 59.

Additionally, Plaintiff asserts that Defendant Miller falsified the Plaintiff's annual review report in retaliation for the Plaintiff filing grievances, which was acknowledged by Plaintiff's counselor during his annual review held on September 12, 2022. Id., ¶¶ 61-63.

On September 28, 2022, Plaintiff alleges that he alerted the former secretary of the Department of Correction, George Little, that the "SCI Forest administration was interfering with the Plaintiff's incoming legal mail since 2021" and he was "seeking his intervention regarding SCI Forest [sic] relentless retaliation." Id., ¶¶ 64-65. Plaintiff avers that he never received a response from former Secretary Little and that on December 20, 2022, Superintendent Irwin transferred Plaintiff to another facility in retaliation and "to interfere with his civil proceeding," which was scheduled for December 21, 2022. Id., ¶ 67. When Plaintiff asked an officer why he was being transferred, he was told that it was an administrative transfer and "they do not like you here." Id., ¶ 69.

### IV. STANDARD OF REVIEW

This Court has succinctly set forth the appropriate standard for consideration of a motion to dismiss under Fed. R.Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must "nudge [his or her] claim across the line from conceivable to plausible". Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007). This plausibility requirement means that the complaint must provide enough factual matter to suggest the required element of the claim. Id. In other words, it calls for "enough facts to state a claim to relief that is plausible on its face." Barber v. PSP, 2007 WL 2071896, *2 (W.D. Pa. 2007) *citing* Twombly at 1974. The Court need not accept legal conclusions or inferences drawn by plaintiff if unsupported by the facts set forth in the complaint. Barber, *2, *citing* California Pub. Employee Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) and Twombly at 1965.

The United States Supreme Court has made it clear that the Twombly standard applies to §1983 claims. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Expanding on its decision in Twombly, the Supreme Court stated:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule. Civ. Proc. 8(a) (2).

Ashcroft v. Iqbal, *supra,* 129 S.Ct. at 1949-1950.

V.  **ARGUMENT**

   A. **Eleventh Amendment immunity bars Plaintiff's official capacity claims against Corrections Defendants.**

Plaintiff's § 1983 claims against Corrections Defendants, in their official capacities (see ECF 5 at pp. 3-4), are barred under the Eleventh Amendment to the U.S. Constitution. This is because, absent consent by the state, the Eleventh Amendment bars federal subject matter jurisdiction of suits by private parties against states, state agencies and state officials in their official capacities. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-70 (1997); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54 (1996); Pennhurst, 465 U.S. at 100-01; see also Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21, 31 (1991) (*citing* Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) for the proposition that the Eleventh Amendment "also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury."); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state") (*quoting* Hafer v. Melo, 502 U.S. 21, 25 (1991)).

Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" Id. (*quoting* Alden v. Maine, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Although states may waive immunity, Pennsylvania has expressly withheld its consent to be sued. Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (*citing* 42 Pa. C.S. § 8521(b)). A claim against a state government official, in his or her

5

official capacity, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

For these reasons, all claims against Corrections Defendants Miller, Peters, Wilson, Lee and Irwin in their official capacities, may not proceed.

### B. Plaintiff has failed to allege personal involvement sufficient to establish a cause of action under § 1983 regarding Corrections Defendant Irwin.

Plaintiff has named as a Defendant to this lawsuit the Superintendent of SCI-Forest, Randy Irwin. [ECF 5], at caption and ¶¶ 17-18. Other than naming Superintendent Irwin as a defendant in his Complaint, Plaintiff merely asserts that "Superintendent Irwin transferred the Plaintiff in retaliation and to interfere with his civil proceedings," but fails to state any facts to support these claims. Id., ¶ 67. Plaintiff's assertions are speculative and conclusory in nature and do not give rise to a constitutional claim against Defendant Irwin.

For liability to attach under § 1983, the Supreme Court requires that a complaint allege personal involvement or acquiescence in the commission of the wrong on the part of the defendant. See Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, state defendants "cannot be held responsible for a constitutional violation which he or she neither participate in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). This personal involvement requirement has long been the standard in the Third Circuit and was again reaffirmed in Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). See also Rode v. Dellarciprete, 845 F.2d 1995, 1207 (3d Cir. 1988).

The Third Circuit held in Evancho that the mere hypothesis that an official is personally involved in complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding § 1983 liability. See Evancho v. Fisher, 423 F.3d at 354 (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not

6

specifically allege that the A.G. ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them).  To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989)(emphasis added).

Involvement in the grievance and or misconduct appeal process does not demonstrate the actual knowledge necessary for personal involvement.  See Rode v. Dellarciprete, 845 F.2d at 1208 (the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement); Watkins v. Horn, 1997 WL 566080, *4 (E.D.Pa. 1997)(concurrence in an administrative appeal process insufficient); Garfield v. Davis, 566 F.Supp. 1069, 1074 (E.D.Pa. 1983)(affirmation of a Program Review Committee decision insufficient).  This principle continues to be actively applied in the District Courts of Pennsylvania, including the Western District.  See Harris v. Pennsylvania Department of Corrections, 2020 WL 1445831, *3 (W.D.Pa. 2020)("denial of a grievance or appeal is not sufficient to demonstrate personal involvement for section 1983 purposes")(*citing* Simonton v. Tennis, 437 F.App'x 60, 62 (3d Cir. 2011)); Robertson v. Gilmore, 2019 WL 4860658, *4 (W.D.Pa. 2019)("Responding to a grievance is not sufficient to show the actual knowledge necessary for personal involvement")(*citing* Rode v. Dellarciprete, 845 F.2d at 1208).  See also Hayes v. Gilmore, 802 F.App'x 84, 87 (3d Cir. 2020)("although Hayes alleged that some of these Defendants denied Hayes's grievances, such actions do not establish personal involvement"). The mere fact that a defendant receives and reviews a letter or request slip is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not

7

establish that the official endorsed or acquiesced in the conduct at issue). See Alexander v. Fritsch, 2010 WL 1257709 at *15-16 (W.D. Pa. 2010); Bullock v. Horn, 2000 WL 1839171 at *5 (M.D. Pa. 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice.

Furthermore, there is no supervisory liability in a § 1983 action. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). For a supervisory official to be liable, it "is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Rather, a plaintiff must "identify specifically what it is that [the supervisor] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Sample, 885 F.2d at 1118. In other words, the supervisory official must have had actual knowledge of the wrongful conduct, not constructive knowledge. Chavarriaga, 806 F.3d at 222. There is no respondeat superior liability under §1983. Id.; Rizzo v. Goode, 423 U.S. 362 (1976); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

A supervisor has no affirmative constitutional duty to train, supervise, or discipline subordinates to prevent the subordinates from engaging in unconstitutional conduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). When there are no allegations of prior patterns of misconduct, no inference that the defendant official was aware of a specific and substantial risk of impending injury sufficient to allege deliberate indifference can be drawn. Chinchello, 805 F.3d at 134 n.9. Further, to be liable as a "policymaker", the official had to have established or enforced policies and practices directly causing the constitutional violation. Chavarriaga at 223.

Plaintiff has failed to establish the personal involvement of Superintendent Irwin named in his Complaint. Plaintiff merely names this defendant and fails to allege how he is involved in the alleged claims. Even if Plaintiff were to assert that Defendant Irwin has knowledge of or responded to grievances filed by Plaintiff or failed to adequately respond to complaints, a defendant's involvement in the grievance process is not enough to establish actual knowledge for personal involvement. Neither can his assertions that Defendant Irwin failed to do anything even after Plaintiff allegedly sought intervention due to the retaliation from his staff amount to the personal involvement required to state a claim. As stated above, a supervisor has no affirmative constitutional duty to train, supervise, or discipline subordinates to prevent the subordinates from engaging in unconstitutional conduct. In light of the absence of any allegations against Defendant Irwin in the Complaint, Plaintiff fails to state a valid claim against this Corrections Defendant and all claims against him should be dismissed with prejudice.

To the extent that Plaintiff argues that his rights were violated due to Defendant Irwin transferring him to another facility, that claim must also fail. It is well settled that an inmate does not have a liberty interest that is implicated by the decision to incarcerate the inmate in any particular facility. Montayne v. Haymes, 427 U.S. 236, 242 (1976) ("[N]o Due Process liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the state."). Likewise, there is no liberty interest invoked when a prisoner is transferred from a prison in one state to a prison in another state. Olim v. Wakinekona, 461 U.S. 238 (1983) (prisoner transferred from Hawaii to California prison). Given a valid conviction, the Constitution does not "guarantee the prisoner will be placed in any particular prison. … The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." Meachum v. Fano, 427 U.S. 215, 224 (1976) (emphasis in

9

original); see also McKune v. Lile, 536 U.S. 24, 39-40 (2002) ("[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted."); Podhorn v. Grondolsky, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program.")  Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'") Thomaston v. Meyer, 519 Fed. Appx. 118, 119 (3d Cir. 2013) (quoting McKune, 536 U.S. at 39).

In light of the allegations contained in the Complaint, Plaintiff fails to state a valid claim against Corrections Defendant Irwin and these claims must be dismissed, with prejudice.

### C. Plaintiff has failed to allege facts sufficient to state a claim under the Eighth Amendment against Corrections Defendants.

In the Complaint, it appears that Plaintiff is also alleging that Corrections Defendants violated his Eighth Amendment Rights by failing to correct misconducts or by filing false misconducts/reports against him. See [ECF 5], ¶¶ 50-52, 61-62. Specifically, Plaintiff asserts that Defendant Wilson fabricated a misconduct and Defendant Miller falsified Plaintiff's annual review report in retaliation for Plaintiff filing a grievance. Id. To the extent that Plaintiff asserts the issuance of false or fabricated misconducts as a violation of his rights under the Eighth Amendment, that claim must fail. This Court, in the course of denying a motion for preliminary injunctive relief, stated that "Plaintiff cannot establish a likelihood of success on the merits of these claims because '[t]he filing of a false misconduct report ... is not a cognizable constitutional claim.'"  Calipo v. Wolf, 2018 WL 7412835, *4 (W.D.Pa. 2018), *report and recommendation adopted*, 2019 WL 858035 (W.D.Pa. 2019)(*quoting* Jackson v. Schouppe, 2018 WL 3361270, *5

(W.D.Pa. 2018) *and citing* Stewart v. Cameron, 2018 WL 827609, at *4 (W.D.Pa. 2018)("[T]he filing of a false misconduct report does not state a cognizable constitutional claim")).

Indeed, in Booth v. Pence, 141 F.App'x 66, 68 (3d Cir. 2005), the Third Circuit affirmed the district court's conclusion "that issuance of false misconducts was not a sufficiently serious deprivation to support a claim of cruel and unusual punishment." Booth v. Pence, 141 F.App'x at 68 (*citing* Farmer v. Brennan, 511 U.S. 825, 834 (1994)). See Dalie v. Pennsylvania Department of Corrections, 2017 WL 3316265, *6 (W.D.Pa. 2017)("The filing of a false misconduct report does not violate the Eighth Amendment as such an act does not constitute the denial of basic human needs, such as clothing, food, shelter, medical care, or sanitation")(*citing* Booth v. Pence, *supra*; Laurensau v. Pluck, 2013 WL 4779010, *10 (W.D.Pa. 2013)("a false misconduct charge does not itself qualify as an Eighth Amendment violation") ")(*citing* Booth v. Pence, *supra*).

Thus, Plaintiff's allegations regarding false misconducts fail to state a claim under the Eighth Amendment. Such allegations also fail to state a claim under due process clause of the Fourteenth Amendment. As one court recently stated:

> '[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest.' Burns v. PA Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011)(*citing* Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). '[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection].' Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)(*quoting* Sandin, 515 U.S. 472 (1995)). Here, Sanchez's ninety (90) day confinement in segregation is insufficient to establish that he was deprived of a liberty interest. See Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010)(*per curiam*)("[C]onfinement in AC for 178 days and a 90-day placement on the RRL does not amount to an 'atypical and significant hardship' when compared to the ordinary incidents of prison life, and thus, Nifas has no protected liberty interest"); Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)(holding that "exposure

11

>> to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [...] by a court of law" and does not constitute a due process violation (quotation omitted)).
>
>   Additionally, 'so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.' Smith, 293 F.3d at 654; see also Thomas v. McCoy, 467 F.App'x 94, 97 (3d Cir. 2012)(*per curiam*)("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports"). In other words, Sanchez cannot state a due process claim based solely on the filing of an allegedly false misconduct report. See Smith, 293 F.3d at 653; see also Banks v. Rozum, 639 F.App'x 778, 782 (3d Cir. 2016)(*per curiam*)("[N]o due process violation arose from the misconduct charge that Banks received after prison officials said he had tampered with his radio, even though Banks alleges that the charge was based on false information"); Seville v. Martinez, 130 F.App'x 549, 551 (3d Cir. 2005)(*per curiam*)("With respect to Seville's claim that his due process rights were violated, the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process").

Sanchez v. Walton, 2019 WL 249537, *2-*3 (E.D.Pa. 2019).

Accordingly, Plaintiff's present allegations regarding the issuance of false or fabricated misconducts fail to state a claim under the Eighth or Fourteenth Amendments and should therefore be dismissed.

### D. Plaintiff's First Amendment Access-To-Courts claim should be dismissed because Plaintiff cannot establish that he suffered an actual injury.

In the Complaint, Plaintiff appears to allege that he was denied access to the courts under the First Amendment because "SCI Forest administration was interfering with the Plaintiff's incoming legal mail since 2021," and Superintendent Irwin transferred Plaintiff to another facility "to interfere with his civil proceeding." See [ECF 5], at ¶¶ 64, 67. However, Plaintiff fails to allege any facts to support these claims or that the alleged acts caused an actual injury. Corrections Defendants assert that any such claim should be dismissed.

12

This Court has again confirmed that "prisoners retain a right of access to the courts under the First and Fourteenth Amendments." See Holden v. Wetzel, 2021 WL 1090638, *10 (W.D.Pa. 2021)(*citing* Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)). However, "[a] prisoner raising an access-to-courts claim must show that the denial of access caused him to suffer an actual injury." Garcia v. Dechan, 384 F.App'x 94, 95 (3d Cir. 2010). See also Lewis v. Casey, 518 U.S. 343, 351 (1996).

> 'Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.' Monroe, 536 F.3d at 205 (*quoting* Christopher v. Harbury, 536 U.S. 403, 415 (2002)). '[T]he underlying cause of action, ... is an element that must be described in the complaint.' Christopher, 536 U.S. at 415.

Holden v. Wetzel, 2021 WL 1090638, at *10.

"An actual injury occurs when the prisoner is prevented from or has lost the opportunity to pursue a 'nonfrivolous' and 'arguable' claim." Garcia v. Dechan, 384 F.App'x at 95. To demonstrate an "actual injury," a plaintiff must show that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." Lewis v. Casey, 518 U.S. at 356.

Here, Plaintiff has neither alleged nor established that he lost the opportunity to pursue a nonfrivolous and arguable claim. Consequently, Plaintiff is unable to demonstrate an actual injury to allow an Access-to-Courts claim to proceed. Therefore, the Corrections Defendants request that this claim be dismissed for failure to state a claim, with prejudice.

### E. Plaintiff fails to allege a state law conspiracy claim under § 1983 at Count III.

Plaintiff also asserts a state law conspiracy claim in his Complaint, however that claim must fail because Plaintiff fails to allege facts sufficient to support this claim. Plaintiff asserts that

13

"[t]he Defendants acted in concert in that each had a role when…engaging in retaliatory misconduct, transferring, and unfairly punishing the Plaintiff." [ECF 5], at ¶ 85.

To sustain a claim for conspiracy under § 1983, "a plaintiff must adequately allege the elements of a state law conspiracy claim." Estate of Himmelwright v. Brungard, 647 F.Supp.3d 303, 316 (M.D. Pa. 2022). In Pennsylvania, the elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. 2008). To meet the first element, a Plaintiff must include in his complaint allegations of a combination, agreement or understanding among all or between any of the defendants. Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). The agreement must be premised on or designed to achieve a deprivation of the alleged victim's federal constitutional or statutory rights. See Rink v. Northeastern Educational Intermediate Unit 19, 2016 WL 3912985 at *14 (M.D. Pa. 2016). A civil conspiracy claim is not actionable absent allegations establishing an agreement and a violation of § 1983. Id. See also Ammlung, 494 F.2d at 814.

Here, Plaintiff has failed to allege the elements of a civil conspiracy claim. In his Complaint, Plaintiff does not include any factual allegations that Corrections Defendants planned or conspired together to retaliate against, assault or oppress Plaintiff. The facts are devoid of any agreement between the defendants to deprive Plaintiff of his constitutional rights.  Accordingly, Plaintiff has failed to state a claim of civil conspiracy, therefore, his claims against these Corrections Defendants must be dismissed and Plaintiff should not be permitted to amend his Complaint as any amendment would be futile.

## F. Plaintiff fails to allege a state law claim for intentional infliction of emotional distress under § 1983 at Count V.

To the extent that Plaintiff alleges a state law claim for intentional infliction of emotional distress, that claim must also be dismissed because Plaintiff has failed to allege facts that support that claim. Plaintiff asserts that Corrections Defendants "engaged in outrageous and extreme misconduct when they… issued vengeful misconducts, fabricated reports, and transferred the plaintiff." [ECF 5], ¶ 94. Plaintiff claims that these alleged acts committed by "Defendants resulted in severe emotional distress to Plaintiff." Id., ¶ 96. However, to state a claim for intentional infliction of emotional distress: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Doe v. Liberatore, 478 F.Supp.2d 742, 765 (M.D. Pa. 2007) (citing Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997)).

Plaintiff has not met the standard for asserting a claim of intentional infliction of emotional distress against Corrections Defendants. The Complaint is completely devoid of any facts to support that the alleged conduct caused severe emotional distress. Furthermore, as Corrections Defendants stated above, the acts of fabricating misconducts/reports or transferring Plaintiff to another facility do not give rise to a constitutional violation. Accordingly, this claim should be dismissed with prejudice.

## G. Plaintiff fails to assert an equal protection violation under the Fourteenth Amendment at Count VI.

Plaintiff fails to allege facts sufficient to support the claim that he was treated differently from another inmate involved in a misconduct and thus fails to state an equal protection claim under the Fourteenth Amendment. Plaintiff asserts that Corrections Defendants violated his rights when they "issued the Plaintiff a misconduct that involved him and Inmate Brown NG-8852. However, (Defendant) Peters 'only' issued the Plaintiff a misconduct." [ECF 5], at ¶¶ 55-56.

15

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). A person can also bring an equal protection claim as a "class of one". Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); Gagliardi v. Clark, 2006 WL 2847409 at *11-12 (W.D. Pa. 2006).  To qualify as a class of one, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in the treatment.  Hill, 455 F.3d at 239; Cornell Narberth LLC v. Borough of Narberth, 167 A.3d 228, 243 (Pa. Cmwlth. 2017).

A lack of evidence that a defendant has treated the plaintiff any differently than other members of his class is fatal to a class of one equal protection claim. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); Babb v. Plusa, 2016 WL 100184 at n.12 (Pa. Cmwlth. 2016) (not reported) (citing Uniontown Newspapers, Inc. v. Roberts, 839 A.2d 185, 198 (Pa. 2003)). This is true even when a suspect class is involved.  City of Cleburne at 439; Whitney v. Wetzel, 649 Fed. App'x 123, 128 (3d Cir. 2016).

Here, Plaintiff does not allege facts sufficient to demonstrate that he was treated differently from other similarly situated inmates. Plaintiff merely asserts that Defendant Peters only issued Plaintiff a misconduct, but does not explain how he knows that. There are also no facts that support the notion that he and the named inmate (Brown) were in fact similarly situated.  It is not clear whether Plaintiff and inmate Brown were involved to the same extent, equally at fault or what actions lead to the misconduct. Furthermore, Plaintiff fails to provide any facts that show that there was no rational basis for the difference in the treatment or that it was done intentionally.

16

Accordingly, Plaintiff cannot assert an equal protection claim under the Fourteenth Amendment and this claim should be dismissed.

## VI. CONCLUSION

Based on the foregoing, Corrections Defendants respectfully requests that this Court grant their Partial Motion to Dismiss Plaintiff's Complaint, and dismiss the following:

(1) all claims against the Corrections Defendants in their respective official capacities;

(2) all claims against Corrections Defendant Irwin based on his lack of personal involvement;

(3) Plaintiff's Eighth Amendment claim against all Corrections Defendants;

(4) Plaintiff's Fourteenth Amendment equal protection claim against all Corrections Defendants; and

(5) all claims against the Corrections Defendants asserted under the Pennsylvania state constitution.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By: *s/ Joan E. Owhe*
JOAN E. OWHE
Deputy Attorney General
Attorney ID 331123

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

Counsel for Defendants

**Office of Attorney General**
**1251 Waterfront Place**
**Mezzanine Level**
**Pittsburgh, PA 15222**
**Phone: (412) 627-0365**

jowhe@attorneygeneral.gov

**Date: December 23, 2024**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN TOOTLE,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:24-cv-0162 |
| v. | : | |
| | : | Magistrate Judge Dodge |
| **JOHN DOE CORRECTIONAL** | : | |
| **OFFICERS, JOHN DOE, MILLER,** | : | Electronically Filed Document |
| **PETERS, WILSON, LEE** and | : | |
| **SUPERINTENDENT IRWIN,** | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Joan E. Owhe, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **December 23, 2024**, I caused to be served a true and correct copy of the foregoing document titled **Brief in Support of Corrections Defendants' Partial Motion to Dismiss Complaint** to the following:

**VIA U.S. MAIL**
  **Smart Communications/PADOC**
  **Brian Tootle, LS-1066**
  **SCI Dallas**
  **PO Box 33028**
  **St. Petersburg, FL 33733**
  *Pro Se Plaintiff*

                                                            *s/ Joan E. Owhe*
                                                           **JOAN E. OWHE**
                                                           Deputy Attorney General