IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN TOOTLE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:24-cv-162 |
| ) | |
| v. ) | Judge Susan Paradise Baxter |
| ) | Magistrate Judge Patricia L. Dodge |
| JOHN DOE, Correctional Officers, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**I.   Recommendation**

It is respectfully recommended that the Partial Motion to Dismiss filed by Defendants Superintendent Irwin, Wilson, Peters, Miller, and Lee (ECF No. 29) be granted in part and denied in part.

**II.   Report**

**A.   Relevant Procedural History**

Plaintiff Brian Tootle, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this action against Defendants Superintendent Irwin, Wilson, Peters, Miller, and Lee ("Corrections Defendants") as well as two John Doe correctional officers. All Defendants are DOC employees at the State Correctional Institution at Forest. (ECF No. 5.) In the Complaint, Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 as well as state law claims. He seeks compensatory and punitive damages.

The Corrections Defendants filed the instant Partial Motion to Dismiss, accompanied by a Brief in Support. (ECF Nos. 14-15). Plaintiff subsequently filed a Response and a Brief in Opposition to the Motion to Dismiss. (ECF Nos. 25-26.) The Motion is ripe for consideration.

B.  **Factual Allegations in Complaint**

On April 23, 2022, Plaintiff submitted a grievance seeking the perpetual establishment of a certain religious ceremony as well as "in person visits resuming back to seven hours, and the jail resuming back to normal operation." (Grievance # 978743) (ECF No. 5 ¶ 21.) On May 9, 2022, Plaintiff submitted two grievances: one against Corrections Officers Wilson and Morris for denying his grievances (Grievance # 979717) and one concerning Corrections Officer Peters' "perpetual unethical behavior." (Grievance # 979699) (*Id.* ¶¶ 22, 23.) On May 14, 2022, Plaintiff's virtual visit with Jermaine Alexander was terminated and Alexander was suspended for 90 days because of the presence of Qadirah Pettus. (*Id.* ¶ 24.)[1] His visits had not been terminated or suspended before he filed Grievance # 978743, and Pettus had been present during visits "under Alexander's account" many times before. (*Id.* ¶ 25.)

During an institutional search on June 8, 2022, Plaintiff and his cellmate Devon Brown were handcuffed and placed outside of their cell. (*Id.* ¶ 26.) Plaintiff had a verbal exchange with one of the corrections officers who was conducting the search because of the mishandling of Plaintiff's religious books and for throwing Plaintiff's sheets away. (*Id.* ¶ 27.) During the search, one of the officers said: "Policy say [sic] face the wall" to which Plaintiff replied, "Policy say [sic] you should have your name tag on." (*Id.* ¶ 28.) The other corrections officer screamed, "Face the wall!" and both John Doe officers slammed Plaintiff's head into the wall. (*Id.* ¶ 29.) After Plaintiff was returned to his cell, he alerted staff that he required medical attention because his head hurt

---

[1] According to Plaintiff, while he has a history of being retaliated against by the administration of SCI Forest, the "pertinent" retaliation against him, as alleged in the Complaint, began on May 14, 2022. The Complaint references a lawsuit, *Tootle v. Long,* that was commenced by Plaintiff in 2020. (ECF No. 5 ¶ 19.) As reflected on the Court's public docket, Plaintiff filed a civil rights lawsuit against Corrections Officer Long which is pending in this Court at Docket No. 20-235.

2

and his face was swollen. (*Id.* ¶¶ 31-32.) The corrections officers outside of his cell laughed at him and left the unit. (*Id.* ¶ 33.) When the next shift arrived, Plaintiff alerted a sergeant and was then taken the medical department, where he was examined and his injuries were photographed. (*Id.* ¶¶ 34, 35.)

The next day, Plaintiff was interviewed by a lieutenant who assured Plaintiff that an investigation would ensue. (*Id.* ¶ 37.) Plaintiff did not file a grievance concerning this incident based on fear of retaliation. (*Id.* ¶ 38.)

Corrections Officer Miller denied Plaintiff's grievance against Wilson and Morris on June 15, 2022. (*Id.* ¶ 49.)

Plaintiff was summoned to speak with the unit manager, Corrections Officer Miller, on June 17, 2022. (*Id.* ¶ 39.) Miller told Plaintiff that he was causing a lot of trouble and proposed a "truce." (*Id.* ¶40.) Plaintiff agreed and said that he just wanted to be left alone (*Id.* ¶ 41.) Miller told him that if he kept filing grievances "they are going to keep writing you up and fucking with you." (*Id.* ¶42.) Plaintiff told Miller that he felt like he was taking action to frustrate Plaintiff and cause him stress. (*Id.* ¶ 43.) Miller replied, "Yea, that's how I gang war, but I already talked to my folks, so they know, and I'm going to Sgt Wilson's (C/O Wilson) house tonight to talk to him." (*Id.* ¶ 45.) According to the Complaint, on the same day as this conversation, Miller made copies of Plaintiff's previously filed civil suit and intentionally omitted critical exhibits. (*Id.* ¶ 46.)

On June 24, 2022, Plaintiff alerted the Office of Special Investigations and Intelligence to the assault and continuing retaliation. (*Id.* ¶ 47.) While an investigation ensued, Plaintiff never received a report of this investigation. (*Id.* ¶¶ 47, 66.)

Several days later, Wilson fabricated a misconduct against Plaintiff, and Miller deliberately "guarded" Plaintiff into making the misconduct formal. (*Id.* ¶¶ 50, 51.) Miller then selected another

3

correctional officer to conduct the hearing on the last day it could be held and scheduled it during the same time that Plaintiff had law library hours. (*Id.* ¶¶ 52-54.) As a result, Plaintiff was "forced to send his misconduct to the hearing examiner due to him having a legal deadline." (*Id.* ¶ 54.) Plaintiff was found guilty of the misconduct. (*Id.* ¶ 50.)

On August 17, 2022, Plaintiff alerted internal authorities to Miller's retaliation tactics and the institution's interference with his legal mail and other "pertinent offenses." (*Id.* ¶ 48.)

Peters issued a misconduct only to Plaintiff on August 29, 2022, for an incident involving Plaintiff and another inmate. (*Id.* ¶¶ 55, 56.) In taking this action, Peters disregarded the "Swift Program," a program employed institution-wide, which would have resulted only in the issuance of a warning to Plaintiff. (*Id.* ¶ 57.) In addition, by only acting against Plaintiff, this represented an intentional discrimination against him in retaliation for the grievances he had asserted. (*Id.* ¶ 58.) Corrections Officer Lee rendered the misconduct formal. (*Id.* ¶ 59.) As a result, Plaintiff lost kiosk privileges and his tablet was confiscated. (*Id.* ¶ 60.)

In further retaliation for Plaintiff's filing of grievances, a civil suit, and complaints to internal authorities, Miller falsified Plaintiff's annual review report. (*Id.* ¶ 61.) Plaintiff also claims that SCI Forest administration has interfered with his incoming legal mail since 2021.

On September 28, 2022, Plaintiff contacted the Secretary of the DOC, seeking his intervention in the ongoing retaliation at SCI Forest. (*Id.* ¶ 65.) He did not receive a reply. (*Id.* ¶ 66.)

Superintendent Irwin transferred Plaintiff to another institution on December 20, 2022, for retaliatory purposes and to interfere with his civil lawsuit. Plaintiff had a telephone conference scheduled for the next day. He was told that he was transferred because "they do not like you here." (*Id.* ¶¶ 67- 69.)

4

### C. Legal Standard

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### D. **Discussion**

Plaintiff brings claims of excessive force and battery against the John Doe correctional officers, retaliation, equal protection, and conspiracy claims against all Defendants, and intentional infliction of emotional distress against the Corrections Defendants. Plaintiff brings his claims against all Defendants in both their individual and official capacities.

The Corrections Defendants move to dismiss various claims against them on multiple grounds.

#### 1. Official Capacity Immunity

The Corrections Defendants first argue that the civil rights claims against them in their official capacities are barred under the Eleventh Amendment to the United States Constitution. (ECF No. 15 at 5-6.) They are correct.

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share

6

in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

Accordingly, all of the civil rights claims against Defendants in their official capacities should be dismissed with prejudice.[2]

### 2.  Personal Involvement of Irwin

As Plaintiff asserts in his Complaint and clarifies in his Response to the instant motion, he has asserted a claim against Superintendent Irwin for retaliation. (ECF No. 5 ¶¶ 75-81; ECF No. 26 at 2-4.)

To succeed on a claim for retaliation under the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

The Corrections Defendants do not challenge the sufficiency of any element of the claim. Instead, they argue that Plaintiff has failed to sufficiently allege Irwin's personal involvement in any alleged constitutional violation. (ECF No. 15 at 6-10.)

In a claim brought under 42 U.S.C. § 1983, the plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *Id.*; *see also Parkell*

---

[2] Plaintiff concedes that all claims against Defendants in their official capacities should be dismissed. (ECF No. 26 at 9.)

*v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Corr. Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

Plaintiff asserts that in retaliation for Plaintiff filing a lawsuit in 2020 against Officer Long, and in order to interfere with that lawsuit, Irwin arranged for Plaintiff's transfer to another correctional institution the day before Plaintiff had a scheduled telephone conference.[3] Reading the Complaint in the light most favorable to Plaintiff, and accepting Plaintiff's allegations as true, Irwin arranged for an administrative transfer for retaliatory purposes. At this preliminary stage, these allegations are sufficient to plead a plausible claim for retaliation against Irwin.[4] Therefore, the Motion to Dismiss should be denied as to this claim.

### 3. False Misconducts

The Corrections Defendants next argue that Plaintiff cannot assert a claim under either the Eighth Amendment or the Fourteenth Amendment based on the falsification of misconducts. (ECF No. 15 at 10-12.) In response, Plaintiff asserts that he does not assert such claims; rather, the allegations of falsified misconducts are made in support of his claim of retaliation. (ECF No. 26 at

---

[3] While Plaintiff does not specify the nature of the telephone conference, it appears that it may relate to his lawsuit against Officer Long.

[4] The Corrections Defendants also argue that Plaintiff did not have a liberty interest in being housed in a particular facility. (ECF No. 15 at 9-10.) This argument is irrelevant to a retaliation claim, however. *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) ("Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest.") *See also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (holding that the relevant question in a retaliation case is not whether the prisoner had a "protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.")

4-5.)As discussed above, a retaliation claim need not involve a denial of a protected liberty interest or the imposition of cruel and unusual punishment. All that is required is that retaliatory action be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thomas*, 463 F.3d at 296.

Because Plaintiff states that he is not making a claim under the Eighth or Fourteenth Amendments regarding potential liability for any allegedly false misconducts, the Corrections Defendants' Motion to Dismiss on this issue should be dismissed as moot.

### 4. Access to Courts

The Corrections Defendants next argue that if Plaintiff is asserting a claim that his First Amendment rights were violated because he was denied access to the courts, that claim should be dismissed. (ECF No. 15 at 12-13.) Plaintiff concedes that he failed to properly state a First Amendment claim based on denial of access to the courts. (ECF No. 26 at 9.) He also generally suggests that he should be afforded a right to amend. Accordingly, this claim should be dismissed without prejudice.

### 5. Conspiracy

The Corrections Defendants next argue that Plaintiff has failed to sufficiently allege conspiracy under § 1983. (ECF No. 15 at 13-14.)

To support a conspiracy claim under § 1983, a plaintiff must allege sufficient facts from which a conspiratorial agreement to deprive the plaintiff of a constitutional right can be inferred. *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir. 2012); *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must plead specific facts addressing the time the agreement was made, the period of the conspiracy, the parties to the agreement, and the object of the conspiracy). Conclusory

9

allegations of an agreement are insufficient. *Weir v. Univ. of Pittsburgh*, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (finding dismissal of conspiracy claim to be proper where plaintiff made only conclusory statements of the existence of a conspiracy without factual allegation to support that conclusion).

In response to the Corrections Defendants' motion, Plaintiff asserts that the agreement between the Corrections Defendants can be inferred from the following alleged statements: (1) Miller's warning to Plaintiff that "If you keep filing grievances they are going to keep writing you up and fucking with you and nobody is going to be happy"; (2) Miller's statement that he was going to Sgt. Wilson's house to talk to him; and (3) Sergeant Mantor's statement to Plaintiff that his transfer was "an administration transfer, they do not like you here." (ECF No. 26 at 6-7 (citing ECF No. 5 ¶¶ 42, 45, 69.))

Even viewing these statements and the inferences from them in the light most favorable to Plaintiff, they fail to adequately plead the elements of conspiracy. Miller's alleged warning that "they" would continue their conduct does not demonstrate a plausible agreement between any of the defendants to deny him a constitutional right. By merely referencing "they," Plaintiff fails to identify the parties to this agreement, does not state or even imply that "they" are working together pursuant to an agreement, and does not state when an agreement was made. Further, Miller's statement that he was going to talk to Sgt. Wilson does not identify the nature of the anticipated discussion. While it may be read to imply that Miller intended to discuss Plaintiff's alleged mistreatment with Wilson, the Complaint fails to plausibly plead that Wilson and Miller were parties to a conspiracy, the time period of any alleged conspiracy, or when they made an agreement to deprive Plaintiff of his constitutional rights. Finally, with respect to Sergeant Mantor's statement, the allegation that Plaintiff was transferred because "they" did not like Plaintiff does

not meet any of the required elements to plead a conspiracy. The fact that unidentified parties do not like Plaintiff does not demonstrate the existence of a conspiracy, the parties to the conspiracy are not identified, and the allegations do not imply an agreement to conspire against him or to in any way violate Plaintiff's constitutional rights.

In short, Plaintiff has failed to allege sufficient facts to plead a plausible claim for conspiracy against the Corrections Defendants. Therefore, his claim should be dismissed without prejudice.

### 6. Intentional Infliction of Emotional Distress

The Corrections Defendants next move to dismiss the state law claim of intentional infliction of emotional distress, arguing that Plaintiff has failed to allege sufficient facts to support this claim. (ECF No. 15 at 15.) Plaintiff disputes this assessment. (ECF No. 26 at 8.) The Court need not address the sufficiency of the allegations, however, because the Corrections Defendants are immune from liability for this tort claim under sovereign immunity and the Eleventh Amendment.[5]

To the extent that Plaintiff is bringing the intentional infliction of emotional distress claim against the Corrections Defendants in their *official* capacities, those claims are barred by Eleventh Amendment immunity for the reasons discussed above. *Schutzeus v. Pennsylvania Bd. of Prob. & Parole*, 2020 WL 1911463, at *9 (W.D. Pa. Apr. 20, 2020) (the Eleventh Amendment barred the plaintiff's state law claims asserted against state defendants in their official capacities), aff'd, 2022 WL 58541 (3d Cir. Jan. 6, 2022).

---

[5] A court may raise the issues of Eleventh Amendment and sovereign immunity sua sponte pursuant to 28 U.S.C. § 1915A(b)(2), which permits a district court to dismiss any part of a complaint that seeks monetary relief from a defendant who is immune from suit. *Durham v. Kelley*, 2023 WL 6108591, at *5 (3d Cir. Sept. 19, 2023).

The Corrections Defendants are also entitled to immunity on this claim asserted against them in both their *official and individual* capacities under Pennsylvania law, which provides "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310; *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) ("Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies."); *Schutzeus*, 2020 WL 1911463, at *6) (same).

There are ten exceptions to sovereign immunity. 42 Pa.C.S. § 8521(a), § 8522(b). None of them apply to intentional tort claims, including a claim of intentional infliction of emotional distress, however. *Faust v. Commonwealth Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991) ("intentional tort claims . . . are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)."); *Doe v. Pennsylvania Dep't of Corr.*, 2021 WL 1583556, at *18 (W.D. Pa. Feb. 19, 2021), report and recommendation adopted, 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021).

Thus, as long as the Corrections Defendants were acting within the scope of their employment at the time of their challenged conduct, each will be immune from liability on Plaintiff's intentional infliction of emotional distress claim. Whether the Corrections Defendants acted within the scope of their employment is determined according to Pennsylvania law. On this issue, Pennsylvania follows the Restatement (Second) of Agency, which provides that "(1) Conduct of [an employee] is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the

12

[employer]." *Doe*, 2021 WL 1583556, at *18 (quoting Restatement (Second) of Agency § 228(1) (1958)). Employees' actions are not within the scope of their employment if they are "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019) (quoting Restatement (Second) of Agency § 228(2)).

Plaintiff alleges in the Complaint that the Corrections Defendants "engaged in outrageous and extreme misconduct when they… issued vengeful misconducts, fabricated reports, and transferred the plaintiff." (ECF No. 5 ¶ 94.) This alleged conduct—issuing misconducts and reports and making transfer decisions—places the challenged conduct of the Corrections Defendants squarely within the scope of their employment. Accordingly, state sovereign immunity shields them from liability on Plaintiff's intentional infliction of emotional distress claim. Therefore, this claim should be dismissed with prejudice.

       7.     <u>Equal Protection</u>

Finally, the Corrections Defendants move to dismiss the equal protection claim. (ECF No. 15 at 15-16.)

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

13

Plaintiff has not alleged that he is a member of a protected class; he appears to base this claim on the premise that he is a "class of one." To make out an equal protection claim as a "class of one," Plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

The Corrections Defendants argue that Plaintiff does not allege sufficient facts to support a plausible equal protection claim. They acknowledge that Plaintiff alleges that he alone was issued a misconduct for the August 29, 2022, incident involving Plaintiff and another inmate, but they argue that Plaintiff does not allege sufficient facts to show that he and the other inmate were similarly situated with regard to this incident. (ECF No. 15 at 16.) In response, Plaintiff asserts that his claim is that Defendants treated him differently from that inmate and all inmates at SCI Forest, causing him to be the target of retaliation, assault, falsification of documents, and disproportionate punishments with no rational basis for the same. (ECF No. 26 at 8.)

Plaintiff does not allege sufficient facts to show that he was similarly situated to the whole of the inmate population at SCI Forest with regard to the actions taken against him. Further, his allegation that he and another inmate were both "involved" in an incident that led to a misconduct for Plaintiff alone falls well short of establishing a plausible claim for an equal protection violation where there are no facts alleged to show that Plaintiff and the other inmate were similarly situated with regard to that incident.

As a result, the equal protection claim should be dismissed without prejudice.

E.     **Amendment**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment

14

would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson*, 293 F.3d at 108. As to the claims dismissed with prejudice, amendment would be futile. However, because the Court cannot conclude that amendment would be futile with respect to the conspiracy and equal protection claims, Plaintiff should be provided with an opportunity to amend these claims.

### F. Conclusion

For these reasons, it is respectfully recommended that the Partial Motion to Dismiss (ECF No. 14) be:

1. Granted with prejudice as to:

   a. the § 1983 claims against Defendants in their official capacities, and

   b. the intentional infliction of emotional distress claim.

2. Granted without prejudice as to:

   a. the conspiracy claim;

   b. the access to courts claim, and

   c. the equal protection claim.

3. Denied in all other respects.

Finally, it is recommended that Plaintiff be permitted to amend his Complaint to remedy the deficiencies identified as to the claims of conspiracy, access to courts and equal protection. If he elects to file an amended complaint, he should be advised that it will replace the original complaint. Thus, it must include all claims he wishes to assert (except those dismissed with prejudice). If Plaintiff elects not to file an amended complaint, the case should proceed as to the claims of excessive force and battery against the John Doe Defendants and retaliation (against all Defendants in their individual capacities).

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: June 2, 2025 /s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE